### SIMON v. NEW ORLEANS, T. & M. R. CO. et al.

(Circuit Court of Appeals, Fifth Circuit. April 28, 1917.)

No. 2973.

1. RAILROADS ☞192—FORECLOSURE OF MORTGAGES—SALE—PRICE.

Where a railroad, having approximately 900 miles of road, failed to pay operating expenses and interest on about $3,500,000 of receivers' certificates during a very careful and well-managed receivership, a bid of $6,000,000 by a reorganization committee was a fair price.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 391, 634–642.]

2. RAILROADS ☞192—FORECLOSURE OF MORTGAGES—OBJECTION TO SALE.

On the foreclosure of a mortgage on the N. railroad to secure bonds of the F. railroad company, it was not sufficient ground for refusing to confirm a sale to a bondholders' reorganization committee that such committee, in exchange for certain cash and securities, had agreed to forego any deficiency judgment against the F. company, where the facts did not indicate that, but for this agreement, the F. company, itself in the hands of a receiver, or its reorganization committee, would have been bidders, especially as the agreement could not deprive an objecting bondholder or the trustee of the right to a deficiency judgment.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 391, 634–642.]

3. RAILROADS ☞192—FORECLOSURE OF MORTGAGES—OBJECTION TO SALE.

Where the owners of 80 per cent. of the bonds secured by a railroad mortgage had joined in a plan of reorganization, and it was still open to an objecting bondholder, who was acting purely in his own interests, and not for other minority bondholders, to join in such plan, a confirmation of a sale to a reorganization committee would not be denied, and a resale ordered, merely for the purpose of coercing the committee, by repeated orders of resale, to pay such bondholder the par value of his bonds.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 391, 634–642.]

Appeal from District Court of the United States for the Eastern District of Louisiana; Rufus E. Foster, Judge.

Suit by the New York Trust Company against the New Orleans, Texas & Mexico Railroad Company. From certain orders denying him

leave to intervene, and overruling his objections to confirmation of a sale, Julius Simon appeals. Affirmed.

The following is the opinion of the District Court on opposition to sale, etc.:

On July 8, 1913, the New York Trust Company, as trustee under a mortgage securing an issue of bonds of the St. Louis & San Francisco Railroad Company, known as "New Orleans, Texas & Mexico Division first mortgage, gold bonds," of which $28,582,000 has been issued, filed its bill for the appointment of a receiver for the New Orleans, Texas & Mexico Company. A receiver was appointed and took over the operation of the property. Later, on July 31. 1914, a decree of foreclosure was entered. Owing to the extraordinary financial condition existing in the United States because of the European war, it was considered impracticable by all parties in interest then before the court, and by me, to order the sale of the road at that time. On September 17, 1915, the order of sale was entered, and the date of sale fixed for November 15, 1915. On October 29, 1915, Julius Simon, a resident of Milwaukee, Wis., and owner of 50 of the said bonds, of the par value of $1,000 each, asked leave to intervene to oppose the sale or to require the fixing of an upset price. On this petition an order to show cause issued and was heard on November 5, 1915, by me, and the relief prayed for was denied. but the petition was ordered filed and petitioner was allowed to intervene for the purpose of opposing the confirmation of the sale, if the price paid be considered inadequate, and his right to so do was reserved.

The New York Trust Company then filed a petition, suggesting error in allowing the filing of the petition of Julius Simon, and praying that the order be rescinded and set aside, and on this petition an order was entered on November 11, 1915, requiring Simon to show cause why his petition should not be disallowed and stricken from the files. It was also ordered, pending the determination of the rehearing. that the clerk be directed to refuse for filing any other paper presented by the petitioner. After the entering of the order of November 11th petitioner presented to the clerk what he termed an answer and cross-bill, setting up substantially the same issues as presented by his original pleadings, and asking, in addition to other relief, for the postponement of the sale and the fixing of an upset price, which had already been denied. On the day of sale Simon appeared through his attorney and protested, and his protest was disregarded, and the master proceeded with the sale, and adjudicated the property to Walter F. Taylor and Carl A. De Gersdorff for the price of $6,000,000, and received as a deposit a certified check for 3 per cent. of the bid.

The master reported the sale in due course, and his report was received on November 19, 1915. On November 27, 1915, the purchasers appeared through counsel and obtained an order for confirmation unless opposed in eight days. On December 7, 1915, Simon appeared and filed his opposition to the confirmation of the sale, setting up substantially that the sale was really to a reorganization committee of the bondholders, attacking the fairness of the plan of reorganization, alleging the bidding was suppressed, because of an agreement between the reorganization committee and the reorganizers of the Frisco Railroad, whereby, in exchange for certain cash and securities, the reorganization committee agreed to forego any deficiency judgment against the railroad, and also setting up, as he had previously done, that the value of the property sold was upwards of $41,000,000, but without praying that the sale be set aside and the property readvertised, but praying that the sale be not confirmed, except upon condition that the reorganization committee be compelled to pay him par and accrued interest for his bonds. It developed on the argument that this was expected to be done by the refusal of the court to confirm the sale, and the ordering of a new sale, and in turn the refusal to confirm that sale, and so on ad infinitum, until the condition imposed would be complied with.

[1] Regarding the value of the property sold. of course, it is utterly ridiculous to say that a railroad having approximately 900 miles of road, which during a very careful and well-managed receivership has failed to pay operat-

ing expenses and interest on about $3,500,000 of receivers' certificates, is worth $41,000,000. Evidently, petitioner's figures are largely based on first cost of the road and par value of stocks and bonds owned by the company, most of which are worthless. From my knowledge of the affairs and condition of the road, gathered from a careful and constant supervision of the receivership, I should say that $6,000,000 is not a vile price but, on the contrary, is a very fair figure, everything considered.

[2] With regard to the contention that the bidding had been suppressed by an agreement between the reorganization committee of the defendant company, and the Frisco Railroad, while it is true that an agreement was entered into, substantially as set up in the petition, whereby the reorganization committee agreed to forego any deficiency judgment, it is not shown that, but for this agreement, either the Frisco road or its reorganization committee would have been bidders at the sale, and the inference to be drawn from the facts apparent in the record, of which I must take notice, is that under no condition would the Frisco Railroad, itself in the hands of a receiver, have been a bidder for its New Orleans, Texas & Mexico division, as the same had always been considered a liability rather than an asset. Nor could any agreement between these two committees operate to deprive the petitioner or the trustee of the right to a deficiency judgment. The question of deficiency judgment does not come up at this time, and need not be further considered.

[3] Regarding the alleged unfairness of the plan of reorganization proposed, without going into an analysis of same, it does not appear to me to be unfair. Necessarily, the road cannot be operated unless new capital is invested, and I am not prepared to say that the distinction made between the allotment of bonds and stocks to those participating in the buying of the first lien bonds and those not doing so is unjust. Furthermore, it is apparent that the organization of the committee is not a combination against the petitioner, for he was invited to join it more than two years ago, and this course is still open to him. If the combination is highly advantageous to those engaging in it, the petitioner may have all of these advantages by complying with the same conditions.

The petitioner has cited a great many cases in support of his contentions— none, however, in which the courts have granted anything approximately the relief he asks. He relies mainly upon the cases of Central Trust Company v. Chicago, R. I. & P. Railroad Company, 218 Fed. 336, 134 C. C. A. 144; Louisville Trust Company v. Louisville Railway Company, 174 U. S. page 674, 19 Sup. Ct. 827, 43 L. Ed. 1130; Ballentyne v. Smith, 205 U. S. 289, 27 Sup. Ct. 527, 51 L. Ed. 803. In the first case cited the point considered was the right of an intervener to appeal from a decree denying him permission to file his intervention; but it may be noted that the action there being taken was at the instance of 40 per cent. of the bonds, and a majority of the bondholders were objecting. In Louisville Trust Company v. Louisville Railway Company the allegation of the bill was that the stockholders of the road and the bondholders had combined to sell the road and buy it in for their joint account, and so deprive other lien creditors of their rights. Nothing of that sort appears in this case. In the case of Ballentyne v. Smith the sale was set aside because it appeared conclusively that the property sold was worth seven times the amount of the bid. While such relief is not asked, I do not consider that the price here bid is sufficiently less than the actual value of the property to warrant the sale being set aside for mere inadequacy. It is not attempted to be shown that on a resale the property would bring any more, and the only relief in fact wanted is to compel the purchasers by coercion to pay the petitioner par and accrued interest on his bonds.

It is shown that the owners of $23,177,000 worth of bonds have joined with the reorganization committee—over 80 per cent. The petitioner is in court purely for his own purposes, and not on behalf of the other minority bondholders. I do not think he is entitled to any such relief in a proceeding of this character as he prays for. The original order was intended to preserve petitioner's rights to object to the confirmation of the sale for inadequacy of price or for any other legal reason. To that end it was perhaps unnecessary, but it certainly went no further. In my opinion, the rights of all parties will

be best protected if the order of November 5, 1915, be now recalled and vacated. Petitioner has not availed himself of his right to oppose the sale, but has attempted to engraft another form of action, sui generis, on the proceedings heretofore had.

His prayer for relief will be denied, and his pleadings dismissed and ordered stricken from the files, without prejudice to any rights he may have against the trustee, the St. Louis & San Francisco Railroad Company, any so-called reorganization committee, or any of its members, in appropriate proceedings.

Gustave Lemle, of New Orleans, La., and Walter L. Gold, of Milwaukee, Wis., for appellant.

Morgan M. Mann and Carl A. De Gersdorff, both of New York City, George Denegre, Victor Leovy, Henry H. Chaffe, Wm. C. Dufour, and H. Generes Dufour, all of New Orleans, La., and Frank Andrews, of Houston, Tex., for appellees.

Before PARDEE, WALKER, and BATTS, Circuit Judges.

PER CURIAM. We have carefully examined this record in the light of the oral argument and briefs, and we conclude that the trial judge correctly decided the case, and we concur with the reasoning in Judge Foster's opinion, found in the record.

The decree appealed from is affirmed.